## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **BETTY J. JEFFRIES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:05-0671** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on cross-Motions for Judgment on the Pleadings. (Doc. Nos. 17, 18.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Betty J. Jeffries (hereinafter referred to as "Claimant"), filed an application for DIB on November 7, 2002 (protective filing date), alleging disability as of July 19, 2001, due to hypertension, high cholesterol, headaches, hemorrhoids, acid reflux, knee problems, carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, chronic obstructive pulmonary disease, numbness and weakness of her arms and legs, major depressive disorder, and anxiety disorder. (Tr. at 16, 83, 84-86, 105.) The claim was denied initially and upon reconsideration. (Tr. at 47-49, 54-56.) On August 18, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 57.) The hearing was held on January 7, 2004, before the Honorable Valerie A. Bawolek. (Tr. at 389-94.) By decision dated March 17, 2005, the ALJ determined that Claimant was

not entitled to benefits. (Tr. at 15-27.) The ALJ's decision became the final decision of the Commissioner on July 20, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On August 18, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the

degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 17.) Under the second inquiry, the ALJ found that Claimant had chronic obstructive pulmonary disease (COPD), carpal tunnel syndrome (CTS), degenerative disc disease, major depressive disorder, and anxiety disorder, which were severe impairments. (Tr. at 20.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20-21.) The ALJ then found that Claimant had a residual functional capacity for light work with the following limitations:

> She can stand and/or walk up to six hours out of an eight-hour workday. She can occasionally bend, climb, stoop, crouch, kneel, and crawl, but can climb only stairs and ramps. She must avoid exposure to pulmonary irritants. She would require low stress work. She cannot work in the public service capacity.

(Tr. at 23.) At step four, the ALJ found that Claimant was unable to return to her past relevant work.

5

(Tr. at 24.) Nonetheless, at the fifth inquiry, the ALJ determined, on the basis of Vocational Expert (VE) and Medical Expert (ME) testimony, that Claimant could perform light level jobs such as a lab sample carrier and a laundry folder, and sedentary level jobs such as a sorter and a finisher. (Tr. at 25.) On this basis, benefits were denied. (Tr. at 25-26.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on June 29, 1956, and was 47 years old at the time of the administrative hearing. (Tr. at 16, 24, 84, 399.) Claimant had a seventh grade education and a General Equivalency Diploma. (Tr. at 15, 73, 328-30.) In the past, she worked as a home health aide and a hospital

housekeeper. (Tr. at 16, 24, 119.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in assessing Claimant's pain and credibility and (2) failed to consider Claimant's impairments in combination. The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision.

1. Pain and Credibility Assessment.

Claimant first alleges that the ALJ failed to weigh properly her allegations of disabling pain. (Pl.'s Br. at 17-18.) The Commissioner asserts that although the ALJ found that Claimant's impairments could reasonably be expected to cause the alleged symptoms, she nevertheless found that Claimant's allegations of disabling pain were inconsistent with the record as a whole. (Def.'s Br. at 10-11.) The Commissioner thus argues that the ALJ's analysis was in accordance with the applicable law and Regulations. (Id.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b) (2004); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that

could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
>> (I) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

8

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 21.) Having resolved all doubts in Claimant's favor, the ALJ acknowledged, with regard to the threshold test, that Claimant "produced evidence of an impairment that could reasonably be expected to cause the alleged symptoms." (Tr. at 21.)

9

With respect to the second step, the ALJ considered the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected her ability to work. (Tr. at 21-22.) The ALJ noted the requisite factors, and then analyzed them in the opinion, concluding that the Claimant's complaints suggested a greater severity of impairment than could be shown by the record as a whole. (Tr. at 21-22.)

The ALJ noted Claimant's allegations of constant pain in her neck, shoulders, arms, low back, and legs, dizziness and weakness, and tiredness most of the time. (Tr. at 22.) She further noted that Claimant testified that she can sit no longer than ten minutes, walk only 100 feet before experiencing shortness of breath, and cannot bend to pick up anything. (Tr. at 22.) Claimant testified that her pain is aggravated by standing, bending, walking, lifting, and sitting, and that she uses a pillow between her legs when lying down to alleviate the pain, together with medications. (Tr. at 22.) Despite Claimant's alleged limitations, the ALJ found that Claimant's extremities were non-tender and without clubbing, cyanosis, or edema. (Tr. at 22, 385.) Claimant exhibited normal strength, sensation, and tone. (Id.) She had no definite weakness in her extremities, normal reflexes, good flexion and extension, and was able to walk without difficulty, albeit a slow, mildly antalgic gait. (Tr. at 22, 170, 385.) With respect to Claimant's alleged limitations of her cervical spine, the MRI scan was within normal limits, evidencing some mild diffuse osteoporosis, and a cervical myelogram and CT scan were essentially negative, showing only minimal disc bulging at C5-6. (Tr. at 22, 164-65, 252.) The MRI of her lumbar spine showed only mild degenerative disc disease and some minimal disc bulging, without evidence of significant nerve root sheath impingement. (Tr. at 22, 164-65, 253, 382.)

Although Claimant alleged difficulty buttoning and was unable to pick up a coin from the floor (Tr. at 22, 363, 406.), she reported that she was able to dress and undress without difficulty,

10

but that it took her a while to button, and was able to take care of her personal needs. (Tr. at 22, 131, 406.) Furthermore, she reported her activities of daily living as doing laundry, paying bills, managing bank accounts, mopping floors, and washing dishes. (Tr. at 22, 132.) Medical evidence revealed normal hand grip, good sensation, and the ability to make a full fist. (Tr. at 22, 170, 364, 389.) The EMG and NCS revealed only mild bilateral CTS, with the left side worse than the right side. (Tr. at 22, 158-60.) Dr. Syed Zahir, M.D., acknowledged Claimant's complaints of dropping things and found that she may possibly require surgery, but was awaiting authorization for payment before discussing the surgery with Claimant. (Tr. at 22, 389.) Nevertheless, as the ALJ found, Claimant's pain is controlled with medications (Tr. at 126.), and based on her activities of daily living and ability to manage her personal care, her CTS does not render her completely disabled. (Tr. at 22-23, 126, 132.) Considering Claimant's complaints of pain, together with the medical evidence of record, the ALJ found that Claimant understated her activities of daily living and stated that there is "no basis for such decreased activities in this record." (Tr. at 22.)

Claimant also stated that her ability to walk was limited by experiencing shortness of breath. (Tr. at 22, 402-03.) As the ALJ found however, medical evidence indicates that although Claimant was previously diagnosed as having bronchitis, her lungs were clear to auscultation. (Tr. at 204-09.) The ALJ noted that Claimant continued to smoke cigarettes, most often smoking one and a half packs of cigarettes a day, despite physicians' warnings to stop. (Tr. at 22, 204, 207, 222, 306, 362.) Claimant also indicated that she experiences side effects from her medications, including tiredness, dizziness, weakness, and nausea. (Tr. at 22.) The ALJ found however, that these side effects would not interfere with her performance of any job identified by the VE. (Tr. at 22.)

Finally, the medical evidence also reveals that Claimant's mental impairments improved with treatment in the Oasis Program. (Tr. at 23, 178-79.) The ALJ noted that Claimant is not receiving

11

ongoing psychological treatment and is not taking any psychotropic medications. (Tr. at 23.)

Upon a careful review of the record, the undersigned finds that the ALJ's determination that Claimant's statements respecting her pain/symptoms were not totally credible is supported by substantial evidence. The ALJ's analysis of Claimant's pain and credibility was proper and in accordance with the applicable law and Regulations. The evidence of record indicates, as the ALJ found, that Claimant's allegations of pain and other symptoms are not as debilitating as she contends. (Tr. at 22-23.) The ALJ found that Claimant could perform light work with occasional postural limitations, but climbing only stairs and ramps. (Tr. at 23.) She further found that Claimant must avoid exposure to pulmonary irritants, requires low stress work, and must avoid work in the public service capacity. (Tr. at 23.) Therefore, the ALJ took into account most of Claimant's symptoms in assessing her residual functional capacity. The ALJ's determination respecting Claimant's pain and credibility is supported by substantial evidence, and Claimant's argument is without merit.

2. ALJ's Consideration of Impairments in Combination

Claimant further argues that the ALJ did not properly consider the combined effects of her impairments. (Pl.'s Br. at 17-18.) The Commissioner asserts that the ALJ specifically stated that she was considering Claimant's impairments in combination, and therefore, Claimant's argument is without merit. (Def.'s Br. at 13.) The Commissioner further asserts that Claimant does not allege "any specific functional limitations, supported or otherwise by this record, resulting from any specific combination of her impairments unaccounted for by the ALJ." (Def.'s Br. at 13.)

The Social Security Regulations provide as follows:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your

12

impairments without regard to whether any such impairment, if considered
separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the

existence of the problems, but also the degree of their severity, and whether, together, they impaired

the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396,

398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but

considered in combination to determine the impact on the ability of the claimant to engage in

substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments

have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th

Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence

demonstrating that the ALJ failed to consider the severity of her impairments in combination and

"fractionalized" the impairments. (Pl.'s Br. at 17.) The ALJ specifically noted the requirements of

the Regulations with regard to considering impairments in combination. (Tr. at 17, 20-21.) The ALJ

then discussed Claimant's impairments, finding that her COPD, CTS, degenerative disc disease,

major depressive disorder, and anxiety disorder, were severe impairments. (Tr. at 20.) The ALJ

specifically found, however, that the record did not reflect that Claimant's impairments were

"'severe' enough to meet or medically equal, either singly or in combination, one of the impairments

listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. at 20-21.) Further, the ALJ considered and

accounted for Claimant's various impairments in determining Claimant's residual functional

capacity, limiting her to light work, standing or walking no more than six hours in an eight hour

work day, occasionally performing postural activities, climbing only stairs and ramps, avoiding

exposure to pulmonary irritants, and requiring only low stress work, not in the public service

capacity. (Tr. at 23.) Additionally, the ALJ noted that she had considered all of the evidence of record in making her decision. (Tr. at 25.)

Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and her conclusions are supported by substantial evidence. Claimant's argument is therefore, without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Memorandum Opinion to counsel of record.

ENTER: September 11, 2006.

R. Clarke VanDervort
United States Magistrate Judge

14